No. 31,349

W. G. HAUN, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LANE et al., *Appellees.*

(27 P. 2d 269.)

Opinion filed December 9, 1933.

*W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs* and *Robert H. Nelson,* all of Wichita, for the appellant.

*John S. Elting,* county attorney, *C. E. Vance, Clifford R. Hope* and *A. M. Fleming,* all of Garden City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by W. G. Haun against the board of county commissioners of Lane county to recover upon a contract for the sale of county warrants to be issued by the board for the purpose of building and equipping a courthouse and jail in the approximate amount of $70,000, or not to exceed the amount of $100,000. The petition set out the contract, the refusal of the board to issue and deliver the warrants to plaintiff; but that it had sold and delivered them to other parties. Plaintiff alleged that he had or could have sold the warrants at par plus accrued interest if delivery had been made, and that his services were reasonably worth $2,750 when the contract was breached, and further that the breach of the contract resulted in the total damage to plaintiff in the sum of $4,333, which he claimed with interest from date. To the petition the defendant filed a demurrer on the ground that it did not state a cause of action against the defendant. The demurrer was sustained, and plaintiff appeals from the decision. The contract was in the form of a proposal by plaintiff and an acceptance by the defendant, as follows:

"We hereby propose to purchase the legally issued warrants of your county, issued for the purpose of building and equipping a courthouse and jail in the approximate amount of $70,000 or not to exceed $100,000.

"It is understood and agreed that this contract shall include all legally issued warrants issued for the above-mentioned purposes except those the county sells locally in an amount not exceeding $30,000 of the 1st maturities; said warrants to be dated the day the contract for the construction of your building is let, and maturing in not to exceed ten years; however, it is understood and agreed that said warrants are to be made payable to the contractor, person or persons performing labor and furnishing materials for said building and indorsed by them to us, and, said warrants are to be indorsed on the back thereof by the treasurer of the county 'not paid for want of funds.' The warrants are to be in denominations of one thousand dollars ($1,000) each, bearing interest at the rate of 4¾ per cent per annum, payable semiannually, both principal and interest payable at the Fourth National Bank of Wichita, Kan.

"For said warrants we will pay the flat face value thereof, the interest to be a part of the contract price.

"Provided, we are allowed the sum equal to $27.50 per thousand for our services, which shall include the printing of the blank . . . and our attorneys' services in directing the transcript of proceedings.

"It is further understood and agreed that the warrants are to be put in escrow in the Fourth National Bank, Wichita, Kan., and the bank instructed

to turn same over to us upon payment by us of a sum equal to the architect's monthly approved estimates, and copy of which shall accompany the draft.

"It is further understood and agreed that we may, at our option, fund the warrants into bonds at the earliest possible date, said bonds to bear 4¾ per cent interest and to mature as do the warrants. Said bonds to be exchanged with us for said warrants dollar for dollar, par value.

"It is mutually agreed that the contract is to be let to a good reliable contractor satisfactory to both parties hereto.

"It is further agreed that prior to the delivery of said warrants to us and payment made therefor, you are to furnish us with a complete certified copy of the transcript of proceedings to evidence the legality thereof to the satisfaction of our attorneys.

"The county hereby agrees to pass such resolutions or orders and do all things required of them by us to carry this agreement into full force and effect.

"Respectfully submitted,
"W. G. HAUN & COMPANY—By W. G. HAUN.

"We, the duly authorized officers of Lane county, Kansas, by virtue of a resolution duly and regularly passed, do hereby accept the above proposition this 27th day of March, 1930.      R. L. BOWMAN,
                                              LYMAN S. MILLER,
                                              J. A. HINEMAN."

The contention of the board of county commissioners was that the contract set forth was illegal and void in several particulars, among which are the issuance of warrants dated the day the contract was made, procuring the contractor to indorse them, then having the county treasurer indorse upon them that they were not paid for want of funds when they were to be placed in escrow in the Fourth National Bank of Wichita. It will be noted that the warrants were to draw interest at 4¾ per cent per annum from the date of the contract, and of course the interest would be accumulating before the structure was commenced and before plaintiff would be required to pay for them. Under the law warrants are to be drawn by a board for existing indebtedness. Under the scheme, if carried out, the board would be issuing warrants for sums in excess of the contract price of the sums due to the contractor, which would be a direct violation of R. S. 19-242, which provides:

"It shall be unlawful for any board of county commissioners to allow any greater sum on any account, claim or demand against the county, than the amount actually due thereon, dollar for dollar, according to the legal or ordinary compensation or price for services rendered, salaries or fees of officers, or material furnished," etc.

It has been held that the issue of warrants by the county com-

missioners in violation of law subjects them to prosecution and punishment. (*State v. Pierce,* 52 Kan. 521, 35 Pac. 19.)

Another feature of the contract is that the power and function of the commissioners is interfered with and limited by the provision that the contract is to be let to a contractor satisfactory to both the parties. In the letting the plaintiff is given a part of the functions intrusted to the board. Under it the board could not let a contract unless the broker plaintiff was satisfied with the contractor chosen by the board. In a sense he would sit in as the fourth member of the board and might veto the decision of the three members elected thereon on the ground that the proposed letting to a designated contractor did not meet his approval. This provision was clearly void.

Again, there is the conversion of warrants into bonds provided for, which is also left to the option and discretion of the plaintiff and not to the board authorized to transact the business of the county and to manage the financial affairs of the county, including the execution of the bonds of the county. The commissioners had no power to delegate to plaintiff the functions conferred on themselves in the funding of warrants into bonds "at the earliest possible date." No statutory authority for that interference of the plaintiff in county affairs is cited or found, and it must be held to be invalid.

In his petition plaintiff alleges that by reason of the refusal to deliver the warrants to him he was damaged to the extent of $27.50 per thousand of the amount of warrants, for his services specified in the contract to be paid him for printing blank warrants and for attorneys' fees amounting to $2,750. Apart from the question of the right of the board to enter into a contract for the payment of the fees of plaintiff's attorneys, he did not allege that blank warrants were printed and furnished or that any legal services were procured by him. Since the contract must be held void on other grounds it is not necessary to determine the question of what the liability of the county would be for the services of plaintiff in the transaction.

The plaintiff cites and relies on *Lucas v. Lane County Comm'rs,* 131 Kan. 589, 292 Pac. 765, on the right of the commissioners under sections R. S. 19-1506 and 19-1507 to borrow money in the manner provided for in the contract. As the warrants were to be

issued payable in installments in future years they possess all the features of the borrowing of money. There is a provision of the statute that—

"The board of county commissioners shall not borrow money for the purposes specified in Laws 1911, chapter 141, section 1, without first having submitted the question of such loan to a vote of the electors of the county." (R. S. 19-213.)

It is conceded that no vote of the electors of the county was taken on the proposition of building the courthouse and jail.

In the Lucas case the question decided was as to the authority of the commissioners to purchase a site where the county already had one. It is evident from the opinion that the question of the borrowing of money without a vote of the people was not presented or, at least, it was not considered. The question presented on that branch of the case was confined to the right of the board to purchase a site other than the old one for courthouse and jail under R. S. 19-1506. That act, somewhat special in its nature, made provision for the building of a courthouse and jail in counties having a population not exceeding 10,000, to purchase a site, and also to equip the courthouse and jail and furnish the same, the aggregate cost of the site and the erection and equipment of the courthouse not to exceed $150,000, and of the jail not to exceed $15,000. It is said that the appeal was from that part of the judgment as to the right to purchase the site, and it was held that the purchase might be made.

The decision of the question as to the power of the board to purchase a new site when the county already owned one presents a different question than one to borrow as much as $150,000 without a vote of the people in violation of R. S. 19-213, a question not considered in the Lucas case.

It may be noted that in a test of the power of the board to make a contract a suit was brought against the board, and a judgment was rendered perpetually enjoining it from carrying out the contract. No appeal was taken from that judgment and it stands as a finality against it. It is true the plaintiff, Haun, was not named as a party in that action, and he can claim that it is not binding upon him. However, the board was a proper party, and the judgment against it is final and effectually enjoins it from executing the contract.

As already indicated, the judgment must be held to be absolutely void, and therefore the judgment of the court must be affirmed. It is so ordered.

HUTCHISON, J.: not sitting.